

**ORDERED in the Southern District of Florida on September 22, 2021.**



**Peter D. Russin, Judge
United States Bankruptcy Court**

___

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

In re:

No Rust Rebar, Inc.,

    Debtor.

_____/

Case No. 21-12188-PDR

Chapter 11

No Rust Rebar, Inc.,

    Plaintiff,

v.

Green Tech Development, LLC,

    Defendant.

_____/

Adv. Case No. 21-01111-PDR

## ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT

No Rust Rebar, Inc. and Green Tech Development, LLC litigated this case for over four years in state court before it was removed to this Court. After years of

litigation, only the following questions remain: whether No Rust holds an enforceable oral option contract to purchase real property owned by Green Tech and, if so, whether No Rust is entitled to specific performance. Both parties seek summary judgment, but genuine disputes as to material facts persist. Consequently, the Court denies both motions.

### Background[1]

No Rust is an industrial supply business that manufactures structural reinforcement products.[2] In July 2015, it contracted to purchase real property in Pompano Beach, Florida to use as its manufacturing facility.[3] Based on an agreement with the Seller, No Rust occupied the Property before closing.[4] But as the closing date drew near, No Rust lacked the funds to close.[5] On December 7, 2015, in a Written Consent of the Shareholders (the "No Rust Consent"), No Rust's shareholders acknowledged that:

(1) the closing date was scheduled for December 11, 2015, and there had not been any extension or rescheduling of the closing date;

(2) No Rust placed a $50,000.00 deposit to purchase the Property that it would lose if it failed to close;

(3) No Rust had determined that it was in its best interest to acquire or, at the very least, have a right to use the Property based on the Property's zoning, pricing, and location; and

---

[1] Docket entries filed in this adversary proceeding are cited below as "(Doc. XX)"; docket entries filed in *In re No Rust Rebar, Inc.*, No. 21-12188-PDR (Bankr. S.D. Fla.) are cited below as "(Main Case Doc. XX)".
[2] (Main Case Doc. 12).
[3] (Doc. 24 at p. 25–30; Doc. 30 at ¶ 2).
[4] (Doc. 24 at p. 21–22, 59).
[5] (Doc. 24 at p. 21–22).

    (4)    No Rust had already invested $150,000.00 in "special tenant improvements" since it contracted for pre-closing occupancy with the Seller.[6]

No Rust's shareholders determined that it was in the best interest of No Rust to assign its right to purchase the Property to Green Tech under certain specific terms, including:

    (1)    an assignment fee of $100,000.00;

    (2)    payment of $50,000.00 to cover No Rust's deposit;

    (3)    a triple net-lease between No Rust and the prospective assignee (Green Tech) for a minimum of five years;

    (4)    rent abatement for eighteen months;

    (5)    base rent discount of twenty percent below market rent; and

    (6)    an option to purchase the Property either (i) following the expiration of the first lease year for a purchase price equal to fifteen percent over the original purchase price plus payment of any accrued but unpaid rent or other costs, or (ii) after the first year of the lease term, the first-year option price would be increased by an additional ten percent, plus payment of any accrued but unpaid rent or other costs (the "Option").[7]

The No Rust Consent is signed by No Rust's founder, majority shareholder, CEO, and President – Don Smith – who also provided affidavits in support of No Rust's motion.[8] Attached to Smith's affidavit are notes from representatives of Green Tech (the "Green Tech Notes") and a purported Resolution to Purchase Real Property by the members of Green Tech (the "Green Tech Resolution"), which would have memorialized a commitment by Green Tech to terms that are, in all relevant respects,

---

[6] (Doc. 24 at p. 21–22).
[7] (Doc. 24 at p. 21–22).
[8] (Doc. 24 at p. 22).

identical to those in the No Rust Consent.[9] The Green Tech Resolution, however, was never signed.[10]

Green Tech received the deed to the Property on December 11, 2015.[11] On January 6, 2016, No Rust formally assigned its rights to Green Tech, and No Rust and Green Tech signed a post-closing agreement with the Seller.[12] The same day, Green Tech executed a $598,900.00 note secured by a mortgage on the Property in favor of Pet Star Corporation; Pet Star was owned by the principal of Green Tech.[13] The Mortgage included a "No Transfer" clause, but specifically stated that:

> [I]t is contemplated that the [P]roperty may be sold to [No Rust]. This transfer is approved, but that buying entity must give six months notice prior to pre-paying all or part of the obligation under the Note.[14]

Representatives of No Rust and Green Tech appear to have discussed the consideration provided in exchange for the Assignment, including the Option to purchase the Property in favor of No Rust. However, there is no written document signed by Green Tech agreeing to the terms. Yet, No Rust proceeded under the assumption that the Assignment included the terms described in the No Rust Consent, including the Option. No Rust asserts that in pursuit of ownership of the Property, it took actions including the payment of property taxes for 2016 and 2017, the making of over $150,000.00 worth of valuable and permanent improvements to

---

[9] (Docs. 24 at ¶ 9, pp. 69–70; 25 at pp. 4–7).
[10] (Doc. 24 at pp. 69–70).
[11] (Doc. 1 at 17; 24 at ¶ 11).
[12] (Doc. 24 at p. 24; 30 at ¶ 4).
[13] (Docs. 24 at ¶ 12; 30 at ¶ 5). Neither party has adequately explained how or why the Property was apparently transferred to Green Tech by deed before the Assignment or Mortgage were executed.
[14] (Doc. 1 at p. 23).

the Property, and maintenance of the Property for years.[15]  Neither party provides specific details associated with No Rust's alleged improvements to the Property.

On November 29, 2016, less than one year after Green Tech took title to the Property, No Rust sought to exercise the Option by filing in the public records a Notice of Election to Purchase Real Property.[16] According to the Amended Complaint, Green Tech refused to acknowledge No Rust's alleged right to purchase the Property and asserted that No Rust's filing of the Notice of Election constitutes slander of title.[17] In December 2016, No Rust sued Green Tech in an effort to enforce what it believes is its right to purchase the Property.[18]

In March 2021, after litigation between the parties had been pending for over four years, No Rust filed a voluntary Chapter 11 bankruptcy petition and removed the case to this Court. The only remaining count is Count III, which seeks specific performance requiring Green Tech to consummate the sale of the Property.[19]  Both parties seek summary judgment.[20]

## Jurisdiction

The Court's subject matter jurisdiction in this case is based on "related to" jurisdiction under 28 U.S.C. § 1334(b); the matter was properly removed under 28 U.S.C. § 1452(a), and the parties have consented to the Court entering final orders. The Court has statutory authority to hear and determine this case under 28 U.S.C. §

---

[15] (Doc. 24 at ¶ 9).
[16] (Docs. 1 at ¶¶ 35–38; 24 at ¶ 18, p. 67).
[17] (Doc. 1 at ¶ 38).
[18] The Court notes that Green Tech was not the only defendant in this action, but the only remaining count is Count III for specific performance solely against Green Tech.  *See* (Doc. 1).
[19] (Doc. 1).
[20] *See* (Docs. 6; 23; 45).

157(a) and the general order of reference from the United States District Court for the Southern District of Florida.[21] Venue is proper under 28 U.S.C. § 1409.

## Legal Standard

Fed. R. Bankr. P. 7056 applies Fed. R. Civ. P. 56 to adversary proceedings. Under Rule 56, "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See In re Fisher Island Investments, Inc.*, 778 F.3d 1172, 1195 (11th Cir. 2015); *In re Villas of Windmill Point II Prop. Owners Ass'n*, No. 19-01822-MAM, 2021 1711794, at *3 (Bankr. S.D. Fla. Apr. 29, 2021) (Mora, J.). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion." *Jeffrey v. Sarasota White Sox*, 64 F.3d 590, 594 (11th Cir. 1995) (cleaned up). An issue is "genuine" where the "evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *In re Hampton*, 616 B.R. 917, 920 (Bankr. S.D. Fla. 2020) (Grossman, J.) (quoting *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)).

---

[21] *See* S.D. Fla. Local Rule 87.2(a).

## Analysis

No Rust seeks specific performance under the alleged Option. To win a suit for specific performance, "the plaintiff must do more than merely prove his case by a preponderance of the evidence … he must prove the contract as alleged in his complaint by competent and satisfactory proof which must be *clear, definite and certain.*" *Miller v. Murray*, 68 So. 2d 594, 596 (Fla. 1953) (emphasis added); *see, e.g., Lupetto, Inc. v. South Bay Dev. Grp., LLC*, 302 So. 3d 1061, 1063 (Fla. 3d DCA 2020).

Under Florida's Statute of Frauds, certain types of contracts – including contracts for the sale of land, contracts for leases that exceed one year, and contracts that will not be performed within one year – are only enforceable if they are in writing and signed by the party against whom relief is sought.[22] Fla. Stat. § 725.01; *see Avery v. Marine Bank & Trust Co.*, 216 So. 2d 251, 252 (Fla. 2d DCA 1968) ("It is axiomatic that, under the Statute of Frauds, … a mere oral contract for sale of lands is not enforceable in Florida."). Here, the parties agree there is no written contract signed by Green Tech providing No Rust with the Option. Normally, that would end the inquiry, but No Rust argues that the facts of this case fall under the "partial performance" exception to the Statute of Frauds. To take a contract out of the Statute of Frauds under the partial performance exception, the party seeking enforcement of the oral contract must establish: (1) that an oral contract for sale was made; (2) payment of all or part of the consideration, whether it be in money or services; (3)

---

[22] "The statute of frauds was enacted to prevent fraud and the enforcement of claims based on loose verbal statements made faulty by the lapse of time." *LaRue v. Kalex Const. & Dev., Inc.*, 97 So. 3d 251, 253 (Fla. 3d DCA 2012).

possession by the party seeking enforcement; and (4) the making of valuable and permanent improvements upon the land with the consent of the owner, or, in the absence of improvements, the proof of such facts as would make the transaction a fraud upon the purchaser if it were not enforced. *Miller*, 68 So. 2d at 596.

If No Rust establishes the existence of a valid and enforceable oral contract including the Option, it will then have to show that it is entitled to specific performance by proving that it strictly complied with the applicable provisions of the contract and was ready, willing, and able to perform under the contract at the time it exercised the Option. *See, e.g., Shapiro v. Jacobs*, 948 So. 2d 880, 882 (Fla. 3d DCA 2007).

So, to prevail, No Rust must prove:

(1) No Rust and Green Tech made an oral contract providing No Rust the option to purchase the Property;

(2) No Rust provided at least part of the consideration under the contract;

(3) No Rust possessed the Property;

(4) No Rust made valuable and permanent improvements upon the land with the consent of Green Tech or, alternatively, facts that would make the transaction a fraud upon No Rust if it were not enforced; and

(5) No Rust complied with all applicable terms of the contract and was ready, willing, and able to exercise its rights and perform the contract at the time it exercised its rights.

The parties agree that No Rust meets the third element – possession of the Property – but disagree as to the others.[23] No Rust contends that the record already

---

[23] Green Tech did not originally expressly agree that No Rust possessed the Property, but it appears to acknowledge No Rust's current possession of the Property in its Reply Brief, where it argues, in

establishes all the necessary elements for it to prevail on summary judgment; Green Tech argues that the record does not now, nor could it ever, include the facts required for No Rust to prevail.

## I. **Oral Contract**

Any contract – whether written or oral – requires proof of four elements: (1) an offer, (2) acceptance of the offer, (3) consideration, and (4) sufficient specificity as to the essential terms of the agreement. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009); *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004). In support of its argument that it and Green Tech contracted for the Option, No Rust has submitted evidence that (1) it offered the Assignment contingent on consideration that included the Option; (2) Green Tech accepted the Assignment; (3) Green Tech received the Assignment in exchange for No Rust's receipt of the Option and other consideration; and (4) the terms of the Option clearly and specifically dictated when No Rust could exercise the Option and at what price.

While Green Tech agrees that it paid No Rust $150,000 for the Assignment and there was at least some understanding No Rust could continue to occupy and use the Property, it asserts that, although discussed, it never agreed to include the Option as part of the consideration for the Assignment.

The evidence presented neither satisfies No Rust's burden to establish the existence of the Option by clear, definite, and certain evidence, nor forecloses the

---

part, that "the fact that [No Rust] is in possession of the Property … removes the [Option] from the requirements of the States of Frauds …" *See* (Doc. 36). At the hearing, Green Tech similarly conceded that No Rust currently possesses the Property.

possibility that No Rust could meet such a burden at trial. The Court, as the fact finder, will benefit from further testimony, which will allow the Court to consider the context of the evidence presented, the credibility of the witnesses, and other potential issues. As a result, whether the Option exists remains subject to genuine disputes of material facts.

Green Tech also argues that, even if the Option exists, its purported terms are not sufficiently specific. Contract interpretation is a question of law to be decided by the Court. *See, e.g.*, *Golden v. Univ. of Miami*, 484 F. Supp. 3d 1255, 1262 (S.D. Fla. 2020). The No Rust Consent, Green Tech Notes, and Green Tech Resolution all list the substantively identical terms for the Option. As defined by those documents, the Option gives No Rust the right

> to purchase the Property following expiration of the first lease year for a purchase price equal to [15%] over the original purchase price plus payment of any accrued but unpaid rent or other costs like taxes and insurance. If option to purchase is exercised beyond the first year of the lease term, the first year lease option price would be increased by an additional [10%] (in either case any accrued but unpaid rent, taxes, insurance, etc. would be due and payable together with the purchase price).

To the extent the Option exists, and to the extent these are its terms, they are sufficiently specific. The terms dictate when the Option could be exercised and provide a specific formula for ascertaining the price required to execute under the Option. To the extent the parties might quibble over what specific costs or rents might be due and ought to be included in what No Rust must pay Green Tech to execute under the Option, that does not change that the price is ascertainable and sufficiently definite.

The only portion of the Option that arguably lacks specificity is that portion which specifies the terms for executing the Option beyond the first year of the lease. The language seems to indicate that it can be exercised indefinitely and has no clear end date. Under Florida law, indefinite options are unenforceable. *See, e.g.*, *FM3 Liquors, Inc. v. Bien-Aime*, 319 So. 3d 706, 707–08 (Fla. 3d DCA 2021); *Kelley v. Burnsed*, 805 So. 2d 1101, 1104–06 (Fla. 1st DCA 2002); *Pomares v. J. Krantz Enterprises, Inc.*, 711 So. 2d 615, 616 (Fla. 3d DCA 1998). But "a bilateral contract is severable where the illegal portion of the contract does not go to its essence and, where, with the illegal portion eliminated, there still remain valid legal promises on one side which are wholly supported by valid legal promises on the other." *Guy Bennett Rubin, P.A. v. Guettler*, 73 So. 3d 809, 813 (Fla. 4th DCA 2011) (quoting *Gold, Vann & White, P.A. v. Friedenstab*, 831 So. 2d 692, 696 (Fla. 4th DCA 2002)). While options are unilateral when created, they become bilateral when the buyer exercises the option.[24] *See Old Port Cove Holdings, Inc. v. Old Port Cove Condo. Ass'n Once, Inc.*, 986 So. 2d 1279, 1285 (Fla. 2008); *Allegro at Boynton Beach, L.L.C. v. Pearson*, 287 So. 3d 592, 600 (Fla. 4th DCA 2019).

No Rust exercised the Option on November 29, 2016. To the extent the Option exists, No Rust exercised it, resulting in a bilateral contract. Further, No Rust exercised the Option within the first year of the lease, so the Court could sever the second portion of the Option without affecting its "essence." The issue of whether the

---

[24] "[A] bilateral contract is one in which there is an exchange of promises between two parties to the contract, a unilateral contract is an exchange of a promise for an act or forbearance." *Kolodziej v. Mason*, 996 F. Supp. 2d 1237, 1246 (M.D. Fla. 2014) (citing *Ballou v. Campbell*, 179 So. 2d 228, 229–30 (Fla. 2d DCA 1965)).

term authorizing No Rust to exercise the Option beyond the first year of the lease is impermissibly indefinite is, therefore, immaterial.

## II. Consideration

Next, the Court considers whether No Rust provided Green Tech with at least part of the consideration for the contract. "Under Florida law, the performance of a preexisting duty does not constitute the consideration necessary to support a valid contract." *Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1346 (S.D. Fla. 2011) (cleaned up). Here, it is undisputed that No Rust provided Green Tech with the Assignment, which No Rust asserts was consideration for the Option. If the Option exists, the Assignment was at least part of the consideration owed to Green Tech in exchange for it. As a result, delivery of the Assignment is sufficient to satisfy this element of partial performance.

## III. Permanent Improvements

Under Florida law, to meet the partial performance exception, any action claimed to have been done in furtherance of the alleged contract "must be *referable exclusively to the contract*; the act or conduct relied on as constituting part performance of the contract must have special reference to it and nothing else." *Vargas v. Deutsche Bank Nat. Trust Co.*, 104 So. 3d 1156, 1169 (Fla. 3d DCA 2012) (quoting *Miller*, 68 So. 2d at 596). No Rust alleges it made $150,000 worth of permanent improvements to the Property, but Green Tech argues that No Rust's alleged valuable and permanent improvements are associated with No Rust's occupancy of the premises, not the Option. Despite having an opportunity to clarify

its argument, Green Tech has failed to explain to the Court what it means when it refers to the improvements relating to occupancy, not to the Option.

If, for example, Green Tech's argument is that No Rust's improvements were not made in pursuit of the Option, but rather in relation to the pre-closing agreement with the Seller, to make such a determination, the Court must know: (1) what improvements were allegedly made, (2) when they were made, (3) whether they were made with the permission of Green Tech, and (4) whether they were made exclusively under the alleged Option. Neither party has provided the Court with sufficient evidence to make these determinations.

Alternatively, if Green Tech's occupancy argument relates to whether No Rust's consideration was given specifically for the Option or whether it might relate to another portion of its agreement with Green Tech, such as the lease, the Court finds this argument unavailing. Green Tech has not provided, nor can the Court find, any case law suggesting that each individual clause of a contract must carry its own consideration to take a contract out of the Statute of Frauds under the partial performance exception. As a result, under either theory, Green Tech is not entitled to summary judgment.

### IV. Enforceability by Specific Performance

If No Rust can meet each of the other four elements, it must then be able to establish that it complied with all applicable terms of the contract and was ready, willing, and able to exercise its rights. *See Shapiro,* 948 So. 2d at 882 (quoting *Leverette v. Cochran*, 876 So.2d 2, 3 (Fla. 1st DCA 2004)). "A buyer is financially able

to close a sale, i.e., ready, willing, and able to close, if he has definitely arranged to raise the necessary money – or as much thereof as he is unable to supply personally – by obtaining a binding commitment for a loan to him for that purpose by a financially able third party." *Id.* (quoting *Hollywood Mall v. Capozzi*, 545 So. 2d 918, 920–21 (Fla. 4th DCA 1989)) (cleaned up).

In support of its argument that it was ready, willing, and able to exercise its alleged rights under the Option, No Rust provides Smith's affidavit, which states that No Rust "was, and is ready, willing, and able to perform under the terms of the [Option] to convey the Property to it."[25] Smith's statement is not accompanied by any additional statement or documentary evidence to satisfy the standard. Accordingly, whether No Rust was ready, willing, and able to exercise its rights remains subject to a genuine dispute of material fact.

Accordingly, the Court **ORDERS** that *Green Tech's Amended Motion for Summary Judgment* (Doc. 6) and *No Rust's Cross Motion for Summary Judgment* (Docs. 23 & 45) are **DENIED**.

###

Copies To:
Kevin C. Gleason, Esq.
Stacy Bressler, Esq.

*Kevin C. Gleason, Esq. is directed to serve a copy of this Order on all interested parties.*

---

[25] (Doc. 24 at ¶ 20).